# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 18-1157V

| | | |
|---|---|---|
| * * * * * * * * * * * * * * * * * * * * * * * * | | |
| YOVANNY ALONZO, | * | Chief Special Master Corcoran |
| Petitioner, | * | Filed: March 8, 2024 |
| v. | * | |
| SECRETARY OF HEALTH AND HUMAN SERVICES | * | |
| Respondent. | * | |
| * * * * * * * * * * * * * * * * * * * * * * * * | | |

*Robert J. Krakow,* Law Office of Robert J. Krakow, P.C., New York, NY, for Petitioner.

*Ryan D. Pyles,* U.S. Dep't of Justice, Washington, D.C., for Respondent.

**AMENDED DECISION AWARDING DAMAGES**[1]

This matter was initiated on August 9, 2018. Petitioner alleged that he experienced Guillain-Barré syndrome ("GBS") after receipt of an influenza ("flu") vaccine in 2016. Petition, dated Aug. 9, 2018 (ECF No. 1). Although an entitlement ruling (ECF No. 65) was entered in 2020 in Petitioner's favor after Respondent's concession, the parties were unable (for years thereafter) to resolve damages.

In August 2023, I issued a ruling making some initial damages findings (in particular with respect to pain and suffering and lost earnings) but leaving other matters to be resolved via final briefing. *See* Ruling, dated Aug. 14, 2023 (ECF No. 108) (the "Initial Damages Ruling"). The findings contained in the Initial Damages Ruling are incorporated by reference herein.

The parties have now (after another *five* months) submitted briefs on the remaining damages issues in contention. *See* Petitioner's brief, dated Feb. 21, 2024 (ECF No. 120) ("Br."); Respondent's Brief, dated Feb. 23, 2024 (ECF No. 121) ("Opp."). Below, I summarize their positions, and then resolve damages in their entirety.

---

[1] Under Vaccine Rule 18(b), each party has fourteen (14) days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole Decision will be available to the public in its present form. *Id.*

I.     **Final Damages Issues**

The sole remaining issues to resolve are (a) the amount of the Medicaid lien, and (b) whether any future care items, as set forth in the respective life care plans, warrant consideration outside of Petitioner's existing life insurance coverage. *See* Fox Report, dated Aug. 25, 2022, filed as Ex. C (ECF No. 101-7) at 2; Fox Life Care Plan, dated Aug. 25, 2022, filed as Ex. D (ECF No. 101-8) at 1; Petitioner's Brief in Support of Damages, dated Dec. 16, 2022 (ECF No. 103); Respondent's Response, dated Jan. 20, 2023 (ECF No. 105); Br. at 3.

A.     *Medicaid and Other Liens*

Petitioner has obtained an interim lien statement with Medicaid payment itemizations, and represents (accurately) that Respondent, through informal discussions, has indicated that he does not oppose the Medicaid lien of $84,742.92 because the payment itemizations are appropriately confined to Petitioner's GBS hospitalization and the follow-on residency thereafter. Br. at 6. Accordingly, this amount will be awarded.

However, Petitioner also requests provision be made to repay a lien of $3,860.80 lien for cash/public assistance, which Respondent contests. Br. at 6; Ex. 54, 56. He maintains that he will be liable to satisfy any unpaid portion of the Medicaid lien, and that this sum would be included. *Id.* However, Petitioner also maintains that the New York City Department of Social Services "has exercised flexibility in adjusting lien amounts in consideration of objections," and therefore "[i]t appears likely that the Respondent's objection can be resolved considering that the cash assistance portion of the lien is likely *unrelated to the underlying injury*, and that the pain and suffering award does not encompass such a Medicaid payment." Br. at 7. Therefore, Petitioner has requested an updated and final Medicaid lien and wishes to transmit Respondent's objection to the $3,860.80 lien to the New York City Medicaid authorities.

Respondent confirms that he proffers the Medicaid lien in this matter totaling $84,742.92. Opp. at 1; Ex. 54–55 (ECF Nos. 113-1, 113-2). But he maintains his objection to reimbursement of a "Cash Assistance lien" totaling $3,860.80—noting that it is not compensable under the terms of the Vaccine Act. Ex. 54, 56.; Opp. at 1. Rather, under Section 15(g) of the Act, other types of liens, such as Medicare liens, are not reimbursable, and Petitioner has not otherwise established that a lien for general cash assistance payments should legally be deemed to constitute a Medicaid lien. Opp. at 1; Section 15(g). And there is no evidence showing that the payments are sufficiently tied to expenses that are specifically vaccine-related for them to be reimbursable injury-associated expenses in any event, as set forth in the Act. Opp. at 1; Section 15(a)(1)(B) (establishing an exhaustive list of permitted expenses).

Based on the parties' submissions, I find that Petitioner has not shown either that the cash assistance sum is properly classified as a "Medicaid lien," and also that it is not otherwise likely a

vaccine injury-related expense. Accordingly, this additional amount will not be included in the aforementioned lien sum. I will also not permit additional time for Petitioner to submit an updated and final Medicaid lien amount, since I do not find otherwise that reimbursement of a "Cash Assistance lien" totaling $3,860.80 is compensable under the Act.

      B.     *Future Care Needs*

Petitioner notes that a revised Life Care Plan proposed by Linda Lajterman, RN, and submitted herein (*see* Ex. 58) included "future care for routine annual neurological evaluation and two hours of care per week for a homemaker." Br. at 3. However, Petitioner acknowledges that my Initial Damages Ruling does not allow for provision of such items, since I found that most, if not all, of Petitioner's ongoing health problems are related to his concurrent diabetic neuropathy. *Id.*; Initial Damages Ruling at 2. Petitioner thus maintains that he is constrained (at this level of determination, at least) from requesting future care items proposed by Ms. Lajterman's revised plan without challenging my findings. Br. at 3. Accordingly, Petitioner's position is that because he receives Medicaid, "which covers the cost of most if not all of his medical care needs, it is likely that future medical care such as routine neurological evaluation would be covered thus, in effect, operating as an offset to any provision in an award for the component of future medical care." *Id.* Respondent contests that any of these additional, non-insurance covered care needs are justified. Opp. at 2.

As noted in the Initial Damages Ruling, I provided Petitioner the opportunity to demonstrate that certain requested future care costs potentially exceeding what his existing insurance provides were more likely than not GBS-related, as opposed to associated with treatment of his comorbidities. Initial Damages Ruling at 22. But he has not done so. I also observed in my earlier ruling that there appeared to be a lack of evidence of permanent sequelae from Petitioner's GBS, and that I would require such evidence to award these sums. *Id.* at 22 n.9. This, too, has not been established.

Accordingly, I deny any of the future care life care plan items requested herein. In doing so, I emphasize *the significant amount of time* Petitioner has had to establish these points. It cannot be concluded, based on the procedural record, that Petitioner did not have the opportunity to substantiate these requests—or that he has failed to do so.

      C.     *Other Issues*

The final question to be resolved herein is whether a "special needs trust" is appropriate under the circumstances, as a mechanism for protecting Petitioner's right to certain government benefits, including Medicaid—and whether the damages decision should include those costs. Petitioner stresses that he risks being ineligible for Medicaid after receipt of the damages to be awarded herein. Br. at 4. He acknowledges, however, that costs associated with creating a special needs trust have been repeatedly denied as not being sufficiently related to proceedings on a petition. *Id.*; *L.C. by & through Crumpton v. Sec'y of Health & Hum. Servs.*, No. 14-837V, 2023 WL 2594340, at *7 (Fed. Cl. Spec. Mstr. Mar.

22, 2023) (*citing Torres v. Sec'y of Health and Hum. Servs.*, No. 09-867V, 2013 WL 2256136 (Fed. Cl. Spec. Mstr. Apr. 30, 2013)); *J.R. by Revaitis v. Sec'y of Health & Hum. Servs.*, No. 16-813V, 2018 WL 5629723 (Fed. Cl. Spec. Mstr. Sept. 28, 2018); *Alvardo v. Sec'y of Health and Hum. Servs.*, No. 15-02V, 2017 WL 4053419 (Fed. Cl. Spec. Mstr. Aug. 7, 2017).

Thus, although he cannot identify any reported case decisions awarding costs for the establishment of a special needs trust, Petitioner argues that he "cannot accept the pain and suffering award without establishing a special needs trust that protects his eligibility for Medicaid." Br. at 5. Petitioner notes his understanding that Respondent would oppose an award for the costs of establishing a special needs trust and that he would take the same position that was presented in *L.C. Id.* Thus, Petitioner is aware that "he is free on his own accord, without limitation by the Vaccine Program, to place the pain and suffering award into an appropriate special needs trust after he receives the payment." *Id.*

Accordingly, and in light of the legal posture of the case and the conclusions made in my Initial Damages Ruling, it is Petitioner's position that he does not seek an award of costs associated with the establishment of a special needs trust.

## Conclusion

For all of the reasons discussed above, and in the Initial Damages Ruling, and based on consideration of the record as a whole, I hereby award Petitioner the following:

(1) a lump sum payment of **$170,000.00** for actual pain and suffering in the form of a check payable to petitioner; and

(2) a lump sum payment of **$84,742.92**, representing compensation for satisfaction of the State of New York lien, payable jointly to Petitioner and:

> Department of Social Services
> New York City, Human Resources Administration, Division of Liens and Recovery
> P.O. Box 414799
> Boston, MA 02241-4799

This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of the Court is directed to enter judgment in accordance with this Decision.[2]

---

[2] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master